**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| AARON RIGSBY,<br>7851 Larkwood Street<br>Commerce City, CO 80022<br><br>Plaintiff,<br><br>v.<br><br>SINCLAIR, INC.; SINCLAIR BROADCAST GROUP, LLC, f/k/a SINCLAIR BROADCAST GROUP, INC.; SINCLAIR TELEVISION GROUP, INC.; and WGXA LICENSEE, LLC, each at<br>10706 Beaver Dam Road,<br>Hunt Valley, Maryland 21030<br><br>Defendants. | Case No:<br><br>JURY TRIAL DEMAND |

SLG SANDERS · LAW GROUP ·

**COMPLAINT**

Plaintiff Aaron Rigsby ("Plaintiff"), by and through his undersigned counsel, for his Complaint against defendants Sinclair, Inc. ("Sinclair"); Sinclair Broadcast Group, LLC, f/k/a Sinclair Broadcast Group, Inc. ("SBG"); Sinclair Television Group, Inc. ("STG"); and WGXA Licensee, LLC ("WGXA Licensee") (collectively, "Defendants"), states and alleges as follows:

**INTRODUCTION**

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

2. Plaintiff is a professional storm chaser and videographer. On September 26, 2024, as Hurricane Helene made landfall as a Category 4 storm, Plaintiff filmed a storm surge sweeping houses, boats, and debris up the Steinhatchee River in Steinhatchee, Florida (the "Video"). Plaintiff owns the copyright in the Video, which is registered with the United States Copyright Office.

3. Defendants together operate one of the largest television broadcasting businesses in the United States, including Macon, Georgia television station WGXA and its YouTube account. Defendants assert copyright in their own content, require others to obtain written permission before reproducing it, and maintain a corporate department dedicated to processing copyright complaints.

4. On September 27, 2024, roughly half an hour after Plaintiff first published the Video, Defendants copied portions of it, added their own "WGXA NEWS" branding, and published it on WGXA's YouTube account as a YouTube Short, without a license from Plaintiff. Defendants did not respond to Plaintiff's counsel's 2025 letters. When Sinclair finally responded in 2026, it attributed Defendants' use to an agreement with CNN Newsource, a source that held no right to distribute the Video to Defendants. Defendants continue to display the Video today.

## PARTIES

5. Plaintiff Aaron Rigsby is an individual who is a citizen of the State of Colorado and maintains a principal place of business in Adams County, Colorado.

6. Defendant Sinclair, Inc. is a Maryland corporation with its principal place of business at 10706 Beaver Dam Road, Hunt Valley, Maryland 21030. Sinclair is a publicly traded company whose Class A common stock is listed on the NASDAQ Stock Market under the symbol SBGI.

7. Defendant Sinclair Broadcast Group, LLC is a Maryland limited liability company with its principal place of business at 10706 Beaver Dam Road, Hunt Valley, Maryland 21030. SBG's sole member is Sinclair Holdings, LLC, which is a wholly owned subsidiary of Sinclair.

8. Upon information and belief, SBG was formerly organized as Sinclair Broadcast Group, Inc., a Maryland corporation, and converted to a limited liability company in 2023 in connection with a corporate reorganization in which Sinclair became the parent holding company of SBG.

9. Upon information and belief, defendant Sinclair Television Group, Inc. is a corporation with its principal place of business at 10706 Beaver Dam Road, Hunt Valley,

SLG SANDERS · LAW GROUP ·

Maryland 21030, and is a wholly owned subsidiary of SBG.

10. Upon information and belief, defendant WGXA Licensee, LLC is a limited liability company with its principal place of business at 10706 Beaver Dam Road, Hunt Valley, Maryland 21030. WGXA Licensee is the Federal Communications Commission ("FCC") licensee of record for television station WGXA, Macon, Georgia (FCC Facility ID 58262), and is an indirect, wholly owned subsidiary of Sinclair, SBG, and STG.

11. Defendants operate as a single, integrated media enterprise under common ownership, common management, and common control from their shared headquarters in Hunt Valley, Maryland. Sinclair's Annual Report on Form 10-K for fiscal year 2025, filed jointly by Sinclair and SBG, reports that Sinclair's local television stations are owned and/or operated by STG and its direct and indirect subsidiaries, and Sinclair's public financial disclosures state that the assets of its local media segment are owned and operated by SBG.

12. The digital properties of WGXA are operated as part of that integrated enterprise. The WGXA website, wgxa.tv, which links to the YouTube account on which the Infringement appears, bears a "© 2026 Sinclair, Inc." notice; is governed by terms and conditions published by Sinclair, which describe each station website as one of an ad-supported network of sites operated by affiliates of Sinclair; and directs copyright notices to Sinclair's Legal Department and to a "DMCA Complaints, Corporate Web Department, Sinclair, Inc." designated agent at Defendants' Hunt Valley headquarters.

SLG SANDERS LAW GROUP

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

14. This Court has personal jurisdiction over each Defendant because each Defendant maintains its principal place of business in Maryland, and because the conduct giving rise to this action was directed, supervised, and controlled from Defendants' headquarters in Hunt Valley, Maryland.

15. Venue is proper in this District under 28 U.S.C. § 1400(a) because each Defendant

resides or may be found in this District, and under 28 U.S.C. § 1391(b)(1) and (b)(2) because all Defendants reside in Maryland and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Copyright Ownership

16. Plaintiff is an accomplished professional storm chaser, photographer, videographer, and content creator who has spent more than a decade documenting severe weather and natural disasters throughout North America. Mr. Rigsby has documented more than 150 tornadoes, major hurricanes, blizzards, floods, and wildfires, producing original visual content that has been licensed and published by prominent media organizations worldwide.

17. Mr. Rigsby's photography and video footage have appeared on major broadcast networks and streaming platforms, including ABC, CBS, NBC, CNN, Fox News, and Netflix. His work has received recognition within the meteorological and storm-chasing community, including publication on the cover of Thomas Grazulis's *Significant Tornadoes Update*. In 2023, Mr. Rigsby was publicly honored for rescuing stranded motorists during a flash-flood event in Texas.

18. Mr. Rigsby publishes his footage on his YouTube channel, "Storm Chaser Aaron Rigsby," and licenses it to news organizations and other commercial users. His copyrighted photographs and videos are the product of substantial investments of time, skill, travel, specialized equipment, and personal risk, and he relies upon the protections afforded by United States copyright law to preserve the value and marketability of those works.

19. Plaintiff's videos, including the Video, are original, creative works in which Plaintiff owns protectable copyright interests.

20. On September 26, 2024, Plaintiff rode out Hurricane Helene in Steinhatchee, Florida, and filmed a wall of water surging up the Steinhatchee River, sending houses, boats, and debris crashing into one another and into the shelter where Plaintiff was filming.

21. In creating the Video, Plaintiff personally selected the subject matter, timing, angle, perspective, and camera equipment used to capture the footage and made each and every artistic

SLG SANDERS LAW GROUP

determination necessary for the creation of the work.

22. On September 27, 2024, at approximately 3:42 p.m. Eastern Time, Plaintiff first published the Video on his YouTube channel under the title "HOUSES FLOAT AWAY IN HURRICANE HELENE - Steinhatchee, Florida - 9/26/2024," at URL: https://www.youtube.com/watch?v=uE_XlR2vkYk. The description accompanying the Video begins: "For licensing contact Aaron at rigsbysuniquephotography@gmail.com. One of the craziest hurricane moments of my life as we rode Category 4 Hurricane Helene in Steinhatchee, Florida where a 15ft wall of water came roaring up the Steinhatchee river sending houses, boats and debris smashing into each other and our shelter!" Screengrabs of the Video are attached hereto as Exhibit 1.

23. The Video was registered by the USCO under Registration No. PA 2-510-180, with an effective date of registration of November 9, 2024.

24. Plaintiff has never licensed the Video to any Defendant.

25. Plaintiff created the Video with the intention of it being used commercially and for the purpose of display and/or public distribution.

SLG SANDERS LAW GROUP

**B. Defendants' Business and the Account**

26. Defendants own, operate, or provide programming and operating services to 179 television stations in 81 markets, reaching approximately 38% of United States households, generated more than $3 billion in total revenue in each of 2024 and 2025, and hold themselves out as one of the nation's largest producers of local news.

27. Defendants' local media business derives revenue primarily from the sale of advertising and from fees paid by distributors to carry Defendants' stations. Defendants also earn revenue by selling digital advertisements on third-party platforms and by delivering digital content through websites, mobile applications, and social media.

28. Defendants maintain official YouTube accounts for their stations as part of their digital distribution strategy. One such account is the YouTube account known as WGXA (@WGXA) (the "Account"), which is linked from the WGXA website alongside WGXA's other

social media accounts.

29. Upon information and belief, the Account generates revenue for Defendants directly, through advertising served with Defendants' YouTube content, and indirectly, by building the audience for the WGXA brand and driving viewers to Defendants' advertising-supported broadcasts, websites, and mobile applications.

30. Severe weather and natural disasters are among the most heavily viewed categories of news content. Dramatic disaster footage published in the immediate aftermath of a catastrophe attracts outsized audiences, and Defendants use such footage to capture viewers and the advertising revenue that follows them.

**C. Defendants Are Sophisticated Content Creators and Licensors**

31. Defendants are not casual users of online content. Defendants are professional content creators, owners, and licensees whose business depends on the acquisition, licensing, and protection of rights in audiovisual works.

32. Defendants assert copyright in their own content. The terms and conditions governing Defendants' station websites state that the materials available on those sites are the property of Defendants and their affiliates or licensors and are protected by copyright, trademark, and other intellectual property laws, and prohibit any reproduction or distribution of those materials without prior written permission from the owner.

33. Defendants maintain a written policy under the Digital Millennium Copyright Act, a designated agent for copyright complaints within Sinclair's Corporate Web Department, and a Legal Department to which copyright notices are directed.

34. Defendants' newsrooms are staffed by professional journalists and producers who are trained in, and held to, professional standards governing the sourcing and attribution of third-party material. In another action pending in this Court, SBG has admitted that it provides training on copyright practices, including when material should be licensed. *Global Weather Productions LLC v. Sinclair Broadcast Group, LLC*, No. 1:26-cv-01331-ABA (D. Md.), ECF No. 10 ¶ 24.

35. Defendants have been sued for copyright infringement before, as SBG has

admitted. *Id.* ¶ 27. In *Nicklen v. Sinclair Broadcast Group, Inc.*, 551 F. Supp. 3d 188 (S.D.N.Y. 2021), a federal court rejected Sinclair's contention that displaying a third-party photographer's video taken from social media was not a public display under the Copyright Act.

36. Upon information and belief, Defendants have not implemented adequate internal policies to verify copyright ownership before content use, or their internal policies are not designed to verify copyright ownership or are systematically ignored, indicating a willful, recurring disregard for copyright compliance by an enterprise of Defendants' reach, capabilities, and level of sophistication.

**D. Defendants' Infringing Activity**

37. Upon information and belief, WGXA Licensee, STG, and SBG are each responsible for the content published on the Account, and Sinclair, SBG, and STG supervise and control the WGXA station and its digital operations, including the Account.

38. On September 27, 2024, approximately thirty-one minutes after Plaintiff first published the Video, and without permission or authorization from Plaintiff, Defendants copied portions of the Video and displayed them on the Account as a 55-second YouTube Short titled "Drone footage reveals the massive destruction caused by Hurricane Helene," at URL: https://www.youtube.com/shorts/3OcLggyq4qY (also accessible at https://www.youtube.com/watch?v=3OcLggyq4qY) (the "Infringement"). Copies of screengrabs depicting the Infringement are attached hereto as Exhibit 2.

39. Defendants added their own "WGXA NEWS" logo to the Infringement, presenting Plaintiff's footage as WGXA content, and described the Infringement as showing destruction in "Cedar Key and Steinhatchee, Florida."

40. Portions of the Infringement display Plaintiff's name, "Aaron Rigsby," in translucent, vertical text along the left edge of the frame. Defendants therefore knew that the footage was Plaintiff's work and not their own yet never sought a license from Plaintiff.

41. The Infringement is a copy of portions of Plaintiff's original Video that was directly copied and displayed by Defendants.

SLG SANDERS LAW GROUP

42. The Infringement includes a URL ("Uniform Resource Locator") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than a transitory duration and therefore constitutes a specific infringement.

43. As of October 12, 2026, the Infringement remained publicly displayed on the Account and had been viewed more than 34,000 times.

44. The Video was registered within three months after its first publication. Statutory damages and attorney's fees are therefore available for Defendants' infringement pursuant to 17 U.S.C. § 412.

45. Plaintiff first discovered the Infringement on August 12, 2025.

46. Upon information and belief, Defendants take an active and pervasive role in the content posted on the Account, including, but not limited to, copying, posting, selecting, editing, and displaying videos, including Plaintiff's Video.

47. Upon information and belief, Defendants had complete control over and actively reviewed and monitored the content posted on the Account, had the legal right and ability to control and limit the infringing activities on the Account, and at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

48. Upon information and belief, Defendants have received a financial benefit directly attributable to the Infringement, in that the Infringement attracted viewers to the Account and, in turn, caused Defendants to realize an increase in their advertising and business revenues.

49. Defendants' use of the Video harmed the actual market for the Video.

50. Defendants' use of the Video, if widespread, would harm Plaintiff's potential market for the Video.

**E. Defendants Continued to Infringe After Notice**

51. On September 10, 2025, Plaintiff, via counsel, served a letter on SBG seeking to address Defendants' unauthorized use of the Video on the Account.

52. On October 10, 2025, Plaintiff, via counsel, served a follow-up letter seeking to



SLG SANDERS · LAW GROUP ·

address said complaints in an attempt to avoid litigation, and requested that Defendants cease and desist from their use of the Video.

53. Defendants did not respond to either letter.

54. On September 27, 2024, Plaintiff licensed the Video to CNN for thirty days of use by CNN, on the express condition of "no distribution." That license did not permit CNN to distribute the Video to CNN Newsource affiliates or to any Defendant, and it expired, by its terms, in October 2024.

55. On September 29, 2026, in response to a further letter from Plaintiff's counsel, Sinclair's Associate General Counsel asserted that "the material in question was obtained through our agreement with CNN Newsource." Sinclair did not identify any license from Plaintiff. No agreement between Defendants and CNN could convey rights that CNN did not hold, and any use CNN was permitted to make of the Video ended in October 2024. Defendants' continued display of the Video on the Account since that time is unauthorized under any reading of CNN's license.

56. Notwithstanding Plaintiff's letters, Defendants have not removed the Infringement. As of the date of this Complaint, the Infringement remains publicly displayed on the Account. A screengrab of the Infringement captured on October 12, 2026 is attached hereto as Exhibit 3.

**F. Defendants' Infringement Was Willful**

57. Defendants' infringement was willful. An enterprise that creates, licenses, and polices audiovisual content as its core business; that requires the world to obtain written permission before reproducing its own content; that maintains a corporate department to process copyright complaints; that trains its personnel on when material must be licensed; and that has previously been sued for the unlicensed use of a third party's video, cannot credibly claim it did not know that copying and republishing a professional videographer's footage without a license was infringement.

58. Defendants' sophistication as content creators and licensors, combined with their display of footage bearing Plaintiff's name, their branding of the footage as their own, their same-day exploitation of the Video for commercial gain, and their continued display of the Video after



SLG SANDERS LAW GROUP

notice and long after any CNN use period ended, demonstrates that Defendants knew their conduct was infringing or, at a minimum, acted in reckless disregard of Plaintiff's rights.

59. Upon information and belief, Defendants were aware of facts or circumstances from which the determination regarding the Infringement was apparent. Defendants cannot claim that they were not aware of the infringing activities, including the specific Infringement which forms the basis of this Complaint, since such a claim would amount to only willful blindness to the Infringement on the part of Defendants.

60. As a result of Defendants' misconduct, Plaintiff has been substantially harmed.

**FIRST COUNT**

***(Direct Copyright Infringement, 17 U.S.C. § 501 et seq., Against All Defendants)***

61. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

62. The Video is an original, creative work in which Plaintiff owns a valid copyright.

63. The Video is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

64. Plaintiff has not granted any Defendant a license or the right to use the Video in any manner, nor has Plaintiff assigned any of his exclusive rights in the copyright to any Defendant.

65. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. § 106, Defendants improperly and illegally copied, reproduced, distributed, and publicly displayed the Video, thereby violating Plaintiff's exclusive rights in his copyright.

66. Each Defendant engaged in volitional conduct causing the Infringement, directly or through employees and agents acting within the scope of their employment or agency, and Defendants are jointly and severally liable for the Infringement.

67. Defendants' reproduction of the Video and display of the Video constitutes willful copyright infringement.

68. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendants' profits attributable to the infringement as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages pursuant to 17 U.S.C. § 504(c), enhanced to up to $150,000 for willful infringement pursuant to 17 U.S.C. § 504(c)(2).

69. As a result of Defendants' violations of Title 17 of the U.S. Code, the Court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees pursuant to 17 U.S.C. § 505 from Defendants.

70. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

**SECOND COUNT**

***(Vicarious Copyright Infringement, Against Sinclair, SBG, and STG, in the Alternative)***

71. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

72. This Count is pleaded in the alternative to the First Count pursuant to Fed. R. Civ. P. 8(d)(2), to the extent any of Sinclair, SBG, or STG is found not to have directly infringed. To the extent the Infringement was committed by WGXA Licensee or by any other subsidiary, employee, or agent of Defendants, Sinclair, SBG, and STG are vicariously liable for it.

73. Sinclair, SBG, and STG each had the right and ability to supervise and control the infringing activity. Among other things, they own and control WGXA Licensee and the WGXA station; govern the WGXA website and its linked social media accounts through common terms and conditions; operate the centralized systems through which video content is ingested and redistributed across Defendants' platforms; maintain the corporate department that processes copyright complaints; and train station personnel on copyright practices, including when material must be licensed.

74. Sinclair, SBG, and STG each had a direct financial interest in the infringing



SLG SANDERS · LAW GROUP ·

activity, in that the Infringement attracted viewers to the Account, and the resulting audience and advertising revenue flow to them as the owners and operators of the WGXA station and the Account.

75. Sinclair, SBG, and STG failed to exercise their right and ability to stop the Infringement, including after SBG received Plaintiff's letters.

76. As a result, Plaintiff is entitled to the relief set forth in the First Count against Sinclair, SBG, and STG, jointly and severally.

## THIRD COUNT

***(Contributory Copyright Infringement, Against Sinclair, SBG, and STG, in the Alternative)***

77. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

78. This Count is pleaded in the alternative to the First and Second Counts pursuant to Fed. R. Civ. P. 8(d)(2).

79. Sinclair, SBG, and STG knew or had reason to know of the Infringement, including by virtue of their supervision of the WGXA station's digital operations and, at the latest, upon SBG's receipt of Plaintiff's counsel's letters in September and October 2025.

80. Sinclair, SBG, and STG materially contributed to the Infringement by providing the personnel, systems, and digital distribution channels through which the Video was copied and published, and by continuing to provide them after receiving notice of the Infringement.

81. As a result, Plaintiff is entitled to the relief set forth in the First Count against Sinclair, SBG, and STG, jointly and severally.

## JURY DEMAND

82. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment finding that Defendants have infringed Plaintiff's rights in the Video in violation of 17 U.S.C. § 501 *et seq.* and therefore award damages and other relief as follows:



SLG SANDERS · LAW GROUP ·

a. finding that Defendants infringed Plaintiff's copyright interest in and to the Video by copying and displaying it without a license or consent, and that such infringement was willful;

b. for an award, jointly and severally against Defendants, of actual damages and disgorgement of all of Defendants' profits attributable to the infringement as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award of statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement pursuant to 17 U.S.C. § 504(c)(2);

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendants from any infringing use of any of Plaintiff's works and directing Defendants to remove the Infringement from the Account and from any other website or platform within their control;

d. for costs of litigation and reasonable attorney's fees against Defendants pursuant to 17 U.S.C. § 505;

e. for pre-judgment and post-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: October 20, 2026

**SANDERS LAW GROUP**

By: *\/s/ Craig Sanders*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 132308

*Attorneys for Plaintiff*